United States District Court
Southern District of Texas
**ENTERED**
November 08, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID NEIL BALDWIN and KAREN BETH BALDWIN, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. H-22-395 |
| KNAUF GIPS KG AND KNAUF NEW BUILDING SYSTEM (TIANJIN) CO. LTD. (f/k/a KNAUF PLASTERBOARD (TIANJIN) CO., LTD.), | § § § § § § | |
| Defendants. | § | |

MEMORANDUM AND ORDER

Pending is Defendants' Motion for Summary Judgment (Document No. 76-2) ("Motion"). After considering the parties' submissions and applicable law, the Court orders as follows.

I.  Background

This is a defective drywall case that came to this Court after pretrial proceedings were conducted in MDL 2047, In Re: Chinese-Manufactured Drywall Products Liability.[1] Plaintiffs David and Karen Baldwin purchased a home in Friendswood, Texas in 2009.[2] When the home was constructed in 2006, the builder had installed

---

[1] See Document No. 67 (discussing the procedural history).

[2] Document No. 76-5, Exhibit 3, Supplemental Plaintiff Profile Form.

drywall manufactured and sold by Defendants Knauf Gips KG and Knauf New Building System (Tianjin) Co. Ltd. (f/k/a Knauf Plasterboard (Tianjin) Co., Ltd.).[3] Unbeknownst to Plaintiffs when they purchased their home, its drywall had been defectively designed, manufactured, and sold.[4] Components in the drywall over time would react, break down, and release sulfur compounds and other noxious gasses.[5]

At some point, the drywall broke down and began to emit sulfur compounds and other noxious gasses,[6] and upon inspection, Plaintiffs discovered Defendants' defective drywall as the source of the noxious gasses.[7] Plaintiffs thereafter joined an Alabama lawsuit against Defendants.[8] Plaintiffs' case, alleging negligence, strict liability, breach of warranty, nuisance, and unjust enrichment, and violation of the Texas Deceptive Trade Practices Act, was severed and transferred to this Court for

---

[3] Id.

[4] Document No. 50, Sixth Amended Complaint at ¶¶ 12, 17.

[5] Id.

[6] Id. at ¶¶ 16-17.

[7] Document No. 76-5, Exhibit 3, Supplemental Plaintiff Profile Form; Document No. 81-2, Exhibit B, Plaintiff Profile Form.

[8] See, e.g., E.D. La., No. 2:09-md-0247, Doc. 21334, Fifth Amended Complaint and Exhibit A.

2

trial.[9] Plaintiffs seek recovery, among other things, for the cost to remediate, their lost home value, and compensation for lost use and enjoyment of the home.[10]

Although the MDL Court denied Defendants' Motion for Summary Judgment, this Court granted Defendants' request to file the instant motion for summary judgment limited to three issues to be decided under Texas law, namely, "(i) rights of Plaintiffs as subsequent purchasers; (ii) the Texas Deceptive Trade Practices Act; and (iii) whether Defendants may be subject to punitive damages under Texas law."[11]

## II. Standard

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[9] Document No. 50, Sixth Amended Complaint at ¶¶ 23-92.

[10] Id. at ¶¶ 20-21.

[11] Document No. 69.

3

affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986) (quotation marks omitted). The movant meets its initial burden by demonstrating "the absence of a genuine issue of material fact" and that it is entitled to judgment as a matter of law. See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting Celotex, 106 S. Ct. at 2553).

Once the movant carries this burden, the burden shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Id. (citing Celotex, 106 S. Ct. at 2553-54). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The court must consider the cited materials but may also consider other materials in the record. FED. R. CIV. P. 56(c)(3). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998) (citation omitted); see also Malacara v. Garber, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the

4

nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." (citing cases)).

### III. Discussion

A.  Subsequent Purchaser Claim

Defendants' legal argument is that Plaintiffs' claims for damages to their property "are barred because the damage to the property occurred before they acquired ownership of the property."[12] It is Defendants' contention that because Plaintiffs did not receive an "express assignment of rights from the predecessor-in-interest who owned the property at the time it was damaged, . . . they have no right of action to sue for property damage caused by the allegedly defective drywall installed before they purchased the property."[13] It is correct that "[t]he right to sue is a personal right that belongs to the person who owns the property at the time of the injury[.]" Exxon Corp. v. Emerald Oil & Gas Co., 331 S.W.3d 419, 424 (Tex. 2010) (citation omitted). That "right to sue does not pass to a subsequent purchaser of the property unless there is an express assignment of the cause of action." Id. Thus, absent an express assignment, subsequent

---

[12] Document No. 76-2, Motion at 3.

[13] Id. at 5.

5

purchasers do not have standing to recover for a legal injury to the property that occurred before purchase. Id.

The determinative question thus becomes *when did legal injury to the property occur*, *i.e.*, before or after Plaintiffs purchased the home?[14] Defendants' Motion assumes the legal injury was inflicted when the "allegedly defective drywall [was] installed."[15] But that is not established in the case file and Defendants have not shown that the answer does not involve a genuine issue of material fact. A legal injury "is neither the breach of a duty that gives rise to liability for the legal injury nor the damages that may be awarded as compensation for the legal injury." Crosstex N. Tex. Pipeline, L.P. v. Gardiner, 505 S.W.3d 580, 594 (Tex. 2016) (citation omitted). Legal injury to land may arise long after the tortious act is committed. *See, e.g.*, Ranchero Esperanza, Ltd. v. Marathon Oil Co., 488 S.W.3d 354, 360 (Tex.

---

[14] Plaintiffs state, without support, that they purchased their home on September 25, 2006 from the builder directly. Document No. 81, Response at 4. The General Warranty Deed they cite, however, conveyed the property from the builder to Micah Louis Schott in 2006. *See* Document No. 81-1, Exhibit A. Schott subsequently conveyed the property to Plaintiffs in 2009. *See* id. at CM/ECF pages 4-6 of 7. Plaintiff Karen Baldwin testified in her deposition and via sworn declaration that she purchased the property in November 2009. Document No. 76-4, Exhibit 2, Baldwin Deposition 11:25–12:1; Document No. 76-5, Exhibit 3, Supplemental Plaintiff Profile Form. There is no evidence that Plaintiffs purchased the property directly from the builder in 2006.

[15] Document No. 76-2, Motion at 5.

6

App.--El Paso 2015, no pet.) (held, subsequent purchaser had standing to sue oil company for recovery of damages when oil well, plugged and abandoned 16 years before plaintiff purchased the land, began leaking salt water onto the surface of the land four years after the plaintiff purchased it. "[B]efore a cause of action accrues there must be --at a minimum--some injury, 'be the damage however slight.' . . . [T]here can be a delay between the wrongful act and the first resulting injury and any cause of action does not accrue until the first injury occurs." (citing cases)); Haire v. Nathan Watson Co., 221 S.W.3d 293, 297-98 (Tex. App.--Fort Worth 2007, no pet.) (although denied relief on other grounds, plaintiffs had standing to sue for structural problems that did not begin until several months after they purchased their home from an intermediate owner); *cf.* Exxon Corp., 331 S.W.3d at 424-25 (citing Vann v. Bowie Sewerage Co., 127 Tex. 97, 90 S.W.2d 561, 562-63 (Tex. 1936) as "holding that a cause of action for damages to property resulting from a permanent nuisance accrues to the owner of the land at the time the injury begins to affect the land").

As observed above, a movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 106 S.

7

Ct. at 2553. Defendants have failed to do so. To the extent they argue that a subsequent purchaser of property does not have standing to sue without an assignment of rights when the legal injury is not shown to have occurred before the subsequent purchaser bought the property, they are wrong on Texas law. To the extent they argue that the legal injury arose upon installation of the defective drywall or before Plaintiffs purchased the home, on this issue they have not demonstrated from the case filings and record "the absence of a genuine issue of material fact." Celotex, 106 S. Ct. at 2553. Either way, Defendants have not made the requisite initial showing to obtain summary judgment as a matter of law.

B. Plaintiffs' Texas DTPA Claim

Defendants next move for summary judgment on Plaintiffs' claim under the Texas Deceptive Trade Practices Act ("DTPA"). The DTPA was created "to protect consumers in consumer transactions." Amstadt v. U.S. Brass Corp., 919 S.W.2d 644, 649 (Tex. 1996). To that end, a "defendant's deceptive conduct must occur in connection with a consumer transaction" to be actionable under the DTPA. Id. Accordingly, Plaintiffs must show that Defendants' deceptive act or practice was committed in connection with Plaintiffs' consumer transaction, i.e., the purchase of their home. Id. at 649-50, 652.

8

Plaintiffs identify no deceptive act or practice committed in connection with Plaintiffs' purchase of their home. Instead, Plaintiffs complain that Defendants' deceptive practice induced the *homebuilder* (not them) to purchase and use the product in the construction of the home in 2006.[16] Because the alleged DTPA violation did not occur in connection with Plaintiffs' purchase, Plaintiffs cannot recover under the DTPA. *See, e.g.*, Klein v. Marvin Lumber & Cedar Co., 575 F. App'x 347, 348-49 (5th Cir. 2014) (affirming summary judgment against a subsequent homebuyer on his claims against a window manufacturer where there was no evidence that the manufacturer committed any deceptive act in connection with the subsequent home sale; the subsequent homebuyer identified no manufacturer representation he relied upon in deciding to buy the house from the seller); Todd v. Perry Homes, 156 S.W.3d 919, 922 (Tex. App.--Dallas 2005, no pet.) (affirming judgment for a homebuilder on a subsequent purchaser's DTPA claim because there was no evidence that the builder was connected to that subsequent purchase, no evidence that any representation by the builder reached the subsequent purchaser, and no evidence that the builder benefited from the subsequent transaction); *see also* PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship, 146 S.W.3d 79, 89,

---

[16] Document No. 81 at 8-9 ("Plaintiffs' homebuilder was induced to purchase Defendants' drywall product and use that product based entirely upon this deceptive act.").

9

91 (Tex. 2004); Amstadt, 919 S.W.2d at 649-52. Defendants are entitled to summary judgment on Plaintiffs' DTPA claim. See id.

C.  Plaintiffs' Punitive Damage Claim

Defendants further move for summary judgment on Plaintiffs' claim for punitive damages. In Texas, punitive damages are classified as "exemplary damages." TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(5). Generally, "exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence." Id. § 41.003(a).[17] "Malice" is defined as the "specific intent by the defendant to cause substantial injury or harm to the claimant." Id. § 41.001(7). "Gross negligence" is defined as an act or omission:

> (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and
>
> (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Id. § 41.001(11).

---

[17] Plaintiffs have identified no applicable statutory exception and have made no argument as to why they are exempt from proving fraud, malice, or gross negligence as a predicate for obtaining a punitive damages award.

There are no allegations of fraud, malice, or gross negligence in Plaintiffs' Sixth Amended Complaint, and their response offers no argument as to how their meager evidence could support an award of exemplary damages under controlling Texas law. Plaintiffs attach a 2006 email recognizing that a problem with drywall had arisen in the United States, but there is no evidence that Defendants knew at that time that there was a problem with their drywall.[18] The email states: "Salomon is sure the problem is not Knauf drywall[.]"[19] A subsequent email asks for ideas on how to resolve concerns and states that it "looks like it is going to get VERY nasty and expensive."[20] These two emails are insufficient to raise a genuine issue of material fact on fraud, malice, or gross negligence. Defendants are entitled to summary judgment on Plaintiffs' punitive damages claim.

---

[18] Document No. 81-3, Exhibit C.

[19] Id.

[20] Id. Plaintiffs also attach a business journal article in support of their claim, but the Court agrees that the article is inadmissible hearsay. Plaintiffs make no argument otherwise. Defendants' objection to Plaintiffs' Exhibit D is sustained. See James v. Tex. Collin Cnty., 535 F.3d 365, 374 (5th Cir. 2008) ("Newspaper articles, however, are not proper summary judgment evidence to prove the truth of the facts that they report because they are inadmissible hearsay.").

## IV. <u>Order</u>

For the foregoing reasons, it is

ORDERED that Defendants' Motion for Summary Judgment (Document No. 76-2) is GRANTED on Plaintiffs' Texas Deceptive Trade Practices Act claim and Plaintiffs' claim for punitive damages, and Plaintiffs shall take nothing on these claims. Defendants' Motion for Summary Judgment is otherwise DENIED.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED at Houston, Texas, on this 8TH day of November, 2022.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE